UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA CIOBAN-LEONTIY,<br><br>    Plaintiff,<br><br>    v.<br><br>SILVERTHORN RESORT ASSOCIATES, LP, a California Limited Partnership, WATERWAY HOUSEBOAT BUILDERS, a foreign corporation, VOLVO PENTA OF THE AMERICAS, LLC, a Delaware Limited Liability Company, and DOES 1-50, inclusive,<br><br>    Defendants.<br><br>SILVERTHORN RESORT ASSOCIATES, LP, a California Limited Partnership,<br><br>    Cross-Claimant,<br><br>    v.<br><br>DMITRY GAIDUCHIK, MAKSIM LEONTIY, VOLVO PENTA OF THE AMERICAS, LLC, a Delaware Limited Liability Company, and WATERWAY HOUSEBOAT BUIDERS, a foreign corporation,<br><br>    Cross-Defendants. | No.  2:17-cv-01626-MCE-DMC<br><br>**MEMORANDUM AND ORDER** |

| | |
|---|---|
| 1 | VOLVO PENTA OF THE AMERICAS, LLC, a Delaware Limited Liability Company, |
| 2 | |
| 3 | Cross-Claimant, |
| 4 | v. |
| 5 | DMITRY GAIDUCHIK, MAKSIM LEONTIY, SILVERTHORN RESORT ASSOCIATES, LP, a California Limited Partnership, and WATERWAY HOUSEBOAT BUIDERS, a foreign corporation, |
| 6 | |
| 7 | |
| 8 | |
| 9 | Cross-Defendants. |

Through the present action, Plaintiff Olga Cioban-Leontiy ("Plaintiff") seeks damages for personal injuries she sustained after jumping from a houseboat on Lake Shasta, California and coming into contact with the vessel's propeller. Plaintiff's Complaint was originally filed in Shasta County Superior Court on May 10, 2017, and it included causes of action for products liability and negligence. In addition to suing Defendant Silverthorn Resort Associates, LP, Inc. ("Silverthorn"), the marina where the houseboat had been rented, Plaintiff's Complaint also originally named Volvo Penta of the Americas ("Volvo"), the manufacturer of the houseboat's motor. On August 3, 2017, Volvo removed the case to this Court, citing federal question jurisdiction under both the Federal Boat Safety Act of 1971, 46 U.S.C. §§ 4301, et seq., and the Inland Navigation Rules, 33 U.S.C. § 2701.

Following removal to this Court, Plaintiff filed a First Amended Complaint ("FAC") (ECF No. 17) on October 24, 2017 which named Waterway Houseboat Builders, the company that actually constructed the vessel, as an additional Defendant. Silverthorn and Volvo proceeded to file their own cross-claims for indemnity and contribution, but Waterway was never served with the FAC prior to the time Plaintiff voluntarily dismissed it as a Defendant on May 14, 2018. ECF No. 34. Plaintiff then proceeded to enter into a stipulation with Volvo for dismissal in exchange for a waiver of costs. ECF No. 43.

Under the terms of that stipulation, Plaintiff represented to the Court and to the remaining Defendant, Silverthorn, that it was "no longer pursuing product liability claims against Volvo Penta and Waterway Houseboat Builders, but rather, is pursuing Silverthorn under theories that do not involve Volvo Penta or Waterway Houseboat Builders."  ECF No. 43, p. 2:3-5.

Under the currently operative Third Amended Complaint ("TAC"), filed February 15, 2019 (ECF No. 135),  Plaintiff's claims are directed against Silverthorn, only, and include claims for strict liability, products liability and negligence all focusing upon Silverthorn's alleged failure to provide appropriate safety information to the occupants of the houseboat after it was rented and before the boat was taken out on Lake Shasta.

Presently before the Court is Silverthorn's Motion for Summary Judgment, or alternatively for partial summary adjudication, made on grounds that under the circumstances of this matter Plaintiff cannot possibly pursue any claim premised upon failure to warn against Silverthorn.  According to Silverthorn, because the undisputed facts show that Plaintiff was already well aware of the dangers involved in jumping from the houseboat while the motor was running, any additional warnings it could have provided were irrelevant and would not have prevented the injuries sustained by Plaintiff when she came into contact with the boat's propeller.  As set forth below, Silverthorn's Motion is GRANTED.[1]

## BACKGROUND

On May 30, 2015, while a passenger on a houseboat in Lake Shasta, Plaintiff jumped into the water to retrieve a hat that had blown overboard.  She thereafter sustained injuries to both legs when her body came into contact with the vessel's propeller.

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

Silverthorn had rented the houseboat involved to Plaintiff and a group of approximately twelve friends and relatives, including Plaintiff's now-husband, Maxim Leontiy. The TAC contains three causes of action directed to Silverthorn, all premised on arguments that Silverthorn did not provide adequate warnings of the houseboat's dangerous characteristics before it was rented to Plaintiff and her group. The First Cause of Action, entitled "Strict Liability-Failure to Warn," alleges that Silverthorn had a "duty to warn of the risks associated with reasonable foreseeable uses and misuses" of the vessel but failed to do so.[2] TAC, ¶ 27. Similarly, Plaintiff's Second and Third Causes of Action, as directed to Silverthorn, are premised on its alleged negligence in failing "to provide adequate warnings and/or instructions concerning the defects and use of the vessel" and by not "properly instruct[ing] the occupants of the houseboat on how to safely and competently enter the water from the houseboat." Id. at ¶¶ 40, 52.[3]

Silverthorn's Motion for Summary Judgment presently before the Court is predicated on the assertion that any failure to warn of the vessel's danger, and to thereby hold Silverthorn liable for Plaintiff's injuries, is mooted by Plaintiff's own explicit admissions in deposition that she was well aware of the dangers involved. Silverthorn maintains that given those admissions any failure to warn on its part cannot, as a matter of law, trigger liability when Plaintiff already knew she could be injured when jumping into the water from a boat with its motor running.

First, Plaintiff conceded that she had boating experience before the accident, having gone out with friends in Lake Folsom "often in summertime," perhaps "every other weekend." See Pl.'s Dep., Ex. A to Decl. of David J. Billings, 14:14-19. Plaintiff further admitted that she knew not to "jump from the boat" when the engine was on "because

---

[2] While the First Cause of Action also contains language suggesting that the vessel was defective in some respects, a review of the record indicates that Plaintiff is not pursuing claims for product liability against Silverthorn. See Def.'s Statement of Undisputed Fact ("SUF") No. 1 and evidentiary citations thereto.

[3] Again, while the negligence-based causes of action also contain language, perhaps directed at unnamed fictitious defendants, identifying potential "defects" in the vessel that could suggest a product liability claim, it is undisputed that no such claim is currently being asserted against Silverthorn. SUF No. 1.

there's [a] propeller, and when boat is on, you cannot jump in because boat is moving and it's dangerous." When asked if that danger was due to the potential of being hurt by the propeller, she responded "of course." Id. at 15:25-16:15. Plaintiff even conceded being aware of how serious propeller injuries could be prior to her own accident by admitting that a "friend's friend" had died when a boat propeller caught her legs after falling off a boat in the State of Washington. Id. at 30:10-19.

In addition, Silverthorn goes on to allege that Plaintiff cannot evade responsibility for her actions by claiming that she could not tell whether the houseboat's engine was engaged or not. Plaintiff conceded at deposition that because the generator was on while the houseboat was on the lake, and since both the generator and engine were loud, she could not tell the difference and did not know whether either the engine, the generator, or both were running. Id. at 56:25-57:7.

Given this knowledge, Silverthorn maintains that failure to provide warnings on its part were not a proximate cause of the accident and Plaintiff's resulting injuries, and it requests summary judgment on that basis. According to Silverthorn, the fact that Plaintiff focuses on expert testimony in its opposition to argue that Silverthorn's pre-rental warnings were insufficient is simply immaterial given Plaintiff's own clearly expressed knowledge of the dangers involved before she was injured.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may

move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Silverthorn cannot be liable under a failure to warn theory unless that failure was a "substantial factor" in bringing about Plaintiff's injury. See Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953, 969 (1997). An omission is not a substantial factor with respect to causation if it plays only a "theoretical" part in bringing about injury, damage or loss." Bockrather v. Alderich Chemical Co., 21 Cal. 4th 71, 79 (1999). Here, Silverthorn argues that any failure on its part to warn of a danger that Plaintiff admits she already knew about is immaterial, and at best only a hypothetical factor that cannot give rise to liability on its part. Given Plaintiff's prior boating experience, her admitted awareness of the danger of jumping from a boat with the engine engaged, and her concession that she

could not tell if the engine was on or not at the time of injury, Plaintiff cannot realistically argue that Silverthorn's failure to warn of dangers she already knew and recognized was the cause of her injury as opposed to her own conduct in deciding to jump from the boat. That guts the thrust of Plaintiff's opposition, which relies upon warnings her retained expert, Alison Osinski, claims Silverthorn should have provided with respect to safety practices to be followed in using and operating the houseboat.

In addition, Plaintiff's admission that she had boated on many occasions before the accident ("every other weekend" during the summers on another large body of water, Folsom Lake) raises the so called "sophisticated user" defense, which has been recognized as an exception to any duty to warn. Johnson v. American Standard, Inc., 43 Cal. 4th 56, 65 (2008). As the California Supreme Court pointed out in Webb v. Special Elec. Co., Inc., 63 Cal. 4th 167 (2016), "[b]ecause sophisticated users already know, or should know" about the dangers implicit in using a particular product, any "failure to warn is not the legal cause of [their] harm." Id. at 182. Such knowledge, according to Webb, is deemed to be "the equivalent of prior notice," with the court reasoning that invoking the defense "serves public policy, because requiring warnings of obvious or generally known product dangers [may] invite consumer disregard and contempt for warnings in general" and therefore denigrate their efficacy. Id.

Given these factors, and because it would have been futile for Silverthorn to have warned Plaintiff of risks about which she was already aware, the Court concludes that any failure to warn on Silverthorn's part was not a substantial factor in causing her injuries. Any liability on Silverthorn's behalf is thereby obviated and it is consequently entitled to summary judgment.

///
///
///
///
///

8

**CONCLUSION**

Based on all the foregoing, the Court concludes that Defendant Silverthorn is entitled to judgment as a matter of law.  Consequently, its Motion for Summary Judgment (ECF No. 141) is GRANTED and the Clerk of Court is directed to enter judgment in Silverthorn's favor.

IT IS SO ORDERED.

Dated:  May 29, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE